NOT FOR PUBLICATION

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

_____
                                  :
ANTHONY BUSSIE,                   :
                                  :  Civil Action No. 14-3997 (RMB)
              Petitioner,         :
                                  :
      v.                          :
                                  :
DAVID ORTIZ, et al.,              :     **MEMORANDUM OPINION**
                                  :        **AND ORDER**
              Respondents.        :
_____:

**BUMB**, District Judge:

      This matter comes before the Court upon the Clerk's receipt

of Petitioner's application executed on a § 2241 habeas form

("Petition") and Petitioner's incomplete application to proceed

in this matter in forma pauperis ("IFP").[1]  See Docket Entry No.

1.  Prior to commencing the instant matter, Petitioner commenced

a multitude of civil and habeas actions in this District.[2]  His

_____

      [1]  In a habeas matter, the prisoner seeking to proceed IFP
must submit to the Clerk: (a) a completed affidavit of poverty;
and (b) a certification signed by an authorized officer of the
institution certifying both the amount presently on deposit in
the petitioner's prison account as well as the greatest amount on
deposit in the petitioner's prison account during the six month
period prior to the date of the certification.  See Local Civil
Rule 81.2(b).  Thus, to submit an application to proceed IFP in a
habeas case, the prisoner must: (a) complete all questions in his
affidavit, sign and date that affidavit; and (b) obtain the
signature of the appropriate prison official who certifying the
prisoner's present and the greatest six-month amounts.  See id.

      [2]  See, e.g., Bussie v. Evans, Civil Action No. 13-4316;
Bussie v. United States, Civil Action No. 14-2307; Bussie v. New
Jersey, Civil Action No. 14-2719; Bussie v. United States, Civil
Action No. 14-2932; see also Bussie v. Bush, Civil Action No. 09-

latest action was <u>Bussie v. Unknown Congressman Robert E. Andrews</u>

("<u>Andrews</u>"), Civ. Action No. 14-3210 (RMB) (D.N.J.).   There, this

Court stated:

> [Petitioner] was indicted for knowingly and willfully
> threatening to assault a Congressman.  On April 18,
> 2012, this Court held [Petitioner's] § 4247(d)
> competency hearing.  During the hearing, both parties
> moved for finding him incompetent to stand trial . . .
> .  This Court granted the parties' joint application
> and [upon finding Petitioner incompetent,] placed [him]
> in temporary custody so to restore him to competency.
> [While in pre-treatment and treatment confinement, he
> commenced numerous civil and habeas actions raising
> incoherent challenges.  Hence,] his civil rights claims
> have invariably been dismissed for failure to state a
> claim and [stayed, subject to repleading in the event
> of] his restoration to competency,  while his [habeas]
> claims have been dismissed as premature.

<u>Bussie v. Andrews</u>, 2014 U.S. Dist. LEXIS 70118, at *2-3 and n.1

(D.N.J. May 21, 2014)(citing, <u>inter</u> <u>alia</u>, <u>United States v. Bussie</u>

("<u>Criminal Case</u>"), Crim. Action No. 12-0229 (RMB), footnoted text

incorporated into the main text).[3]

---

6516; <u>Bussie v. Bush</u>, Civil Action No. 10-4555; <u>Bussie v. Bush</u>,
Civil Action No. 10-4594; <u>Bussie v. United States</u>, Civil Action
No. 11-0098; <u>accord</u> <u>Conjured up Entertainment v. United States</u>,
Civil Action No. 11-11475 (commenced on behalf of Bussie and a
juridical entity upon assertion that the United States owed
Bussie $55 million for intelligence he provided to President
Bush); <u>Conjured up Entertainment v. United States</u>, Civil Action
No. 11-1854 (same); <u>Conjured up Entertainment v. United States</u>,
Civil Action No. 11-2076 (same); <u>Conjured up Entertainment v.
United States</u>, Civil Action No. 11-2322 (same); <u>Conjured up
Entertainment v. United States</u>, Civil Action No. 11-2824 (same);
<u>Conjured up Entertainment v. United States</u>, Civil Action No. 11-
2751 (same);  <u>Conjured up Entertainment v. Clinton</u>, Civil Action
No. 12-1894 (same, as to President Clinton).

[3]  Although Petitioner twice consented to treatment with an
antipsychotic medication that could restore him to competency, he

In his <u>Andrews</u> action, Petitioner named "Taron Bussie ('Taron') as co-plaintiff.  Taron, being convicted of aggravated assault, resisting arrest and controlled substance offenses, was sentenced to a three-year residential community program, and is expected to be released on December 24, 2014."  <u>Id.</u> at *1.  Recognizing that Petitioner's "mental impediment greatly affect[ed] his litigation practices," this Court explained to Petitioner that: (a) he had no standing to litigate on Taron's behalf; and (b) habeas petitions were vehicles to seek release from confinement, while civil complaints were vehicles to assert violations of civil rights.  See <u>id.</u> at *5.

---

withdrew his consent both times after just a few treatments.  <u>See</u> <u>Criminal Case</u>, Docket Entry No. 40, at 1-2.  The Government's motion to involuntary medicate Petitioner for the purposes of standing trial was denied.  <u>See</u> <u>id.</u> at 5-20 (analyzing the Government's motion under the four-prong test articulated in <u>Sell v. United States</u>, 539 U.S. 166 (2003)); <u>accord</u> <u>White v. Napoleon</u>, 897 F.2d 103, 113 (3d Cir. 1990) ("convicted prisoners, like involuntarily committed mental patients, retain a limited right to refuse treatment and a related right to be informed of . . . viable alternatives.  The scope of the right to refuse treatment [is] circumscribed by legitimate countervailing State interests. . . .  Accordingly, a prison [or a place of civil confinement] may compel [its inmate] to accept treatment when [the State] officials, in the exercise of professional judgment, deem it necessary to carry out valid medical or penological objectives [so to prevent the inmate from harming himself or others]") (relying on <u>Youngberg v. Romeo</u>, 457 U.S. 307, 322-23 (1982), a decision addressing the rights of civilly committed individuals).  Since the Government unequivocally articulated its intent to seek Petitioner's civil commitment, <u>see</u> <u>id.</u> at 7, 11, and the issue of Petitioner inflicting harm upon himself or others, while in civil confinement, was neither raised nor reached in his <u>Criminal Case</u>, no statement made in this Memorandum Opinion and Order shall be construed as this Court's expression of opinion as to that issue.

Shortly after the Court entered its Andrews decision, the Clerk received the application at bar.  See Docket Entry No. 1, at 1.  Here, naming his warden, the Bureau of Prisons, a fictitious "Treasurer Financial Center" and the Congressman as Respondents, Petitioner asserts that his habeas rights have been violated by the filing fees requirement applicable to all judicial proceedings, by Taron's conviction and by Petitioner's prosecution, if such is ever forthcoming, as well as by what Petitioner perceives as "corruption" of certain unspecified public officials.  See id. at 6-8.  On the basis of these assertions, Petitioner seeks an order eliminating the filing fee requirement and the Eleventh Amendment immunities, new trial for Taron, eradication of what he sees as a "racial problem," vacatur of Petitioner's criminal sentence (that might be imposed if the Government does not withdraw its criminal charges upon his civil commitment), as well as an unspecified "punishment" of the Congressman.  Id. at 8.

As this Court already explained, while addressing Petitioner's numerous prior habeas and civil actions, Petitioner: (a) is without standing to raise challenges on behalf of Taron; (b) cannot challenge a sentence that has not been imposed; (c) cannot litigate claims falling outside the narrow habeas mandate; and (d) cannot litigate philosophical, socio-political and other abstract or hypothetical matters falling outside the "case or

4

controversy" requirement of Article III.[4]  See U.S. Const. art.

III, § 2, cl. 1 (setting forth the limitations of the federal

judicial mandate); Whitmore v. Arkansas, 495 U.S. 149, 154-55

(1990) (the jus tertii requirement); Leamer v. Fauver, 288 F.3d

532, 542 (3d Cir. 2002) (detailing qualitative differences

between habeas and civil matters); Ganim v. Federal Bureau of

Prisons, 235 F. App'x 882 (3rd Cir. 2007) (if a judgment in the

litigant's favor would not affect the fact or duration of his

confinement, habeas relief is unavailable to him, and a civil

complaint is the appropriate vehicle to raise his claims);

Toolasprashad v. Grondolsky, 570 F. Supp. 2d 610, 636 (D.N.J.

2008) (challenges based on hypothetical future developments are

speculative and not cognizable in habeas review since "the

language of [the habeas statute] is set forth in present rather

than in future terms, i.e., it reads: 'The writ of habeas corpus

shall not extend to a prisoner unless . . . he is [rather than

will be] in custody in violation of the Constitution or the laws

or treaties of the United States'") (citation omitted).

Correspondingly, Petitioner's application to proceed IFP

will be denied, and his challenges will be dismissed.[5]

---

[4] Moreover, the constitutionality of the filing fee statute
was long established.  See, e.g., Thomas v. Holder, 2014 U.S.
App. LEXIS 8453 (D.C. Cir. May 6, 2014).

[5]  Since civil complaints are merely received and cannot be
deemed "filed" until and unless the litigant prepay his filing

IT IS, therefore, on this **27th** day of **June 2014**,

   **ORDERED** that Petitioner's applications to proceed in this

matter in forma pauperis is denied; and it is further

   **ORDERED** that the Clerk shall administratively terminate this

matter by making a new and separate entry on the docket reading,

"THIS MATTER IS TERMINATED FOR FAILURE TO OBTAIN IFP STATUS AND

IN LIGHT OF PETITIONER'S ASSERTION OF CHALLENGES RAISED WITHOUT

PROPER STANDING AND/OR NOT COGNIZABLE UNDER ARTICLE III AND/OR

FALLING OUTSIDE THE HABEAS MANDATE AND/OR BEING FACIALLY

MERITLESS"; and it is further

   **ORDERED** that the Clerk shall serve this Memorandum Opinion

and Order upon Petitioner by regular U.S. mail; and it is finally

---

fee or duly obtains IFP status, see 28 U.S.C. § 1915, the court
cannot reach the merits of the litigant's civil claims without
first resolving the IFP issue.  See Izquierdo v. State, 2013 U.S.
App. LEXIS 15533, at *2-3 and n.1 (3d Cir. July 25, 2013).  In
contrast, habeas applications are deemed "filed" upon receipt,
see Brown v. Grondolsky, 2009 U.S. Dist. LEXIS 103111, at *2
(D.N.J. Nov. 5, 2009) (citing to the order stating, "The revised
Habeas Rule 3(b) requires the Clerk to file a petition, even
though it may otherwise fail to comply with Habeas Rule 2.  The
Rule is not limited to those instances where the petition is
defective only in form; the Clerk is also required to file the
petition even though it lacks the required filing fee or an in
forma pauperis form) (quoting 28 U.S.C. § 2254, Rule 3, Advisory
Committee Notes, 2004 Am., brackets and ellipses omitted); accord
Santana v. United States, 98 F. 3d 752 (3d Cir. 1996), therefore
enabling the court to address the merits of the litigant's habeas
claims, although the court may require the litigant's prepayment
of filing fee or submission of a complete IFP application after
its screening on the merits.  See Local Civil Rule 81.2(b).

ORDERED that the Clerk shall enclose in said mailing a blank in forma pauperis form for incarcerated individuals seeking to prosecute a habeas action.  See Hairston v. Gronolsky, 348 F. App'x 716 (3d Cir. Oct. 15, 2009) (a litigant's willingness or unwillingness regardless, his "legal obligation to pay the filing fee [is] incurred by the initiation of the action itself") (citing Hall v. Stone, 170 F.3d 706, 707 (7th Cir. 1999)); accord Bacon v. Mandell, 2013 U.S. Dist. LEXIS 162144 (D.N.J. Nov. 14, 2013) (the Clerk's service of IFP forms and the court's attempts to enforce the IFP requirement is not necessarily futile as to a litigant who commences numerous legal actions while suffering from a mental impairment, since the litigant might still comply with the requirement during his instances of cognitive clarity).


s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**


7